UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MELANIE F. AVERY,

                                  Plaintiff,

                                                        **Hon. Hugh B. Scott**

          v.                                            **13CV662A**

                                                        **Report
                                                        and
CAROLYN W. COLVIN, Acting                               Recommendation**
Commissioner of   Social Security[1],

                          Defendant.

          Before the Court are the parties' respective motions for judgment on the pleadings (Docket

Nos. 12 (plaintiff), 17 (defendant Commissioner)).

## INTRODUCTION

          This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled

to Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

          The plaintiff filed an application for disability insurance benefits on December 18, 2008.

That application was denied initially and on reconsideration.   Plaintiff appeared before

Administrative Law Judge Robert Harvey (hereinafter "ALJ Harvey") on January 6, 2011

(R. 508), who considered the case de novo and concluded, in a written decision dated January 31,

_____

          [1]On February 14, 2013, Carolyn W. Colvin became acting Commissioner of Social
Security.   Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for the
now former Commissioner Michael Astrue as Defendant in this action; no further action is
required, 42 U.S.C. § 405(g).

2011, that the plaintiff was not disabled within the meaning of the Social Security Act (R. 41).

The Appeals Council vacated that decision and remanded (R. 36) for ALJ Harvey to obtain the

opinion of a vocational expert and reconsider plaintiff's credibility (when ALJ Harvey found

plaintiff not to be credible as to her statements concerning the intensity, persistence, and limiting

effects of her symptoms (R. 46)).

   On remand, this matter was heard by Administrative Law Judge William Weir (hereinafter

"ALJ Weir"), who held a remand hearing on December 12, 2011 (R. 539), and generally adopted

the findings of ALJ Harvey (R. 16, 18).   ALJ Weir's decision became the final decision of the

Commissioner on May 3, 2013, when the Appeals Council denied plaintiff's request for review

(R. 6).

   Plaintiff commenced this action on June 25, 2013 (Docket No. 1).   The parties moved for

judgment on the pleadings (Docket Nos. 12, 17).   The motions were deemed submitted on

March 4, 2014 (Docket No. 15).

## FACTUAL BACKGROUND[2]

   Plaintiff was born on April 7, 1969 (R. 43).   She has a GED and no employment history

(R. 43, 47), although she reported a work history as a factory laborer (R. 81).   She claims multiple

mental and physical impairments, namely bipolar disorder, PTSD, anxiety, and obesity (R. 43).

## MEDICAL AND VOCATIONAL EVIDENCE

   Plaintiff testified before both ALJs (R. 509-38, 539-77).   Plaintiff first testified on

January 6, 2011, that she had constant back pain radiating down her legs, mood swings,

flashbacks, and anxiety.   She claimed panic attacks in crowded places and denied most activities

of daily living (R. 514-15, 519-24, 45).   During the remand hearing on December 12, 2011,

_____

[2]References noted as "(R.___)" are to the certified record of the administrative proceedings.

2

plaintiff testified that her back and migraines (cf. R. 515) worsened since the last hearing (R. 556, 561; Docket No. 12, Pl. Memo. at 18).   Plaintiff used a prescribed cane for balance and had a history of falling (R. 557; Docket No. 12, Pl. Memo. at 18).   She complained of "stroke-like" symptoms (R. 556, 559; Docket No. 12, Pl. Memo. at 18).

Both ALJs found that plaintiff had a residual functional capacity ("RFC") to perform light work with additional non-exertional postural and mental limitations (R. 44, 18-19; see Docket No. 12, Pl. Memo. at 20-21).   ALJ Weir found that plaintiff could lift/carry/push/pull up to ten pounds on an occasional basis (R. 18; cf. R. 44 (ALJ Harvey found that plaintiff could lift 20 pounds occasionally, 10 pounds frequently)) and sit for a total of six hours during a workday (R. 19; cf. R. 44 (ALJ Harvey found that plaintiff could sit for two hours)).   Both ALJs found that plaintiff could not work in areas with unprotected heights, around heavy, moving or dangerous machinery, or climb ropes or ladders (R. 19, 44).   She was found to be occasionally limited in bending, climbing, stooping, squatting, kneeling, balancing, and crawling (R. 19, 44).   Plaintiff was found to be moderately limited in the ability to understand, remember, and carry out detailed instructions, and to interact appropriately with the public; she could only work in a job with a moderate amount of stress (R. 19, 44).   She could remember simple instructions and was able to respond appropriately to coworkers and supervisors, but she has frequent difficulty working in coordination or close proximity to others (R. 19, 44).

ALJ Weir posed hypotheticals of different residual functional capacities, leading to the one he adopted, to the vocational expert.   On the hypotheticals closest to plaintiff's stated RFC, the vocational expert opined that there were numerous jobs that such a person could perform in the national and regional economy (R. 19, 544-46), such as housekeeping or small parts assembly (R.

545-46, 20), or a cashier or ticket seller and usher based upon more limitations stated in a

hypothetical (R. 548-49, 21).   Plaintiff then advanced a restriction that plaintiff would miss an

average of three workdays a month, with attendance below 90% (R. 19, 547-52, 550-51), and the

vocational expert testified that an absence rate this high would preclude employment (R. 551, 21).

ALJ Weir found no support in the record for the attendance issue raised by plaintiff (R. 19, 21).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the

plaintiff was not under a disability is supported by substantial evidence.   See 42 U.S.C. § 405(g);

Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).   Substantial evidence is defined as "'more

than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"   Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting

Consolidated   Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person

is disabled when that person is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

12 months."   42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental

impairment or impairments are of such severity that [he or she] is not only unable to do [his or her]

previous work but cannot, considering [his or her] age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy . . . ."   42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that impairment prevents her from returning to her previous type of employment.   Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).   Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative   substantial gainful work which exists in the national economy and which the plaintiff could perform."   Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.   If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).   However, it should be noted that the ALJ has an affirmative duty to fully develop the record.   Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work she has done in the past.   20 C.F.R. §§ 404.1520(e) & 416.920(e).   When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."   See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).   The ALJ must then determine the individual's ability to return to past relevant work given residual functional capacity.   Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff argues that ALJ Weir erred in not complying with the remand of the Appeals Council by not making a credibility finding; instead, ALJ Weir adopted the credibility finding made by ALJ Harvey.   He also argues that ALJ Weir failed to apply the appropriate legal standards in adopting that credibility finding despite the fact the evidence in the record supports plaintiff's subjective complaints.   Next, plaintiff faults ALJ Weir for failing to develop the record and inappropriately relying upon the absence of evidence from treating sources. Finally, plaintiff contends that the RFC did not have evidence to support it.

Defendant argues that the ALJs' determination of plaintiff's RFC was supported by substantial evidence (Docket No. 17, Def. Memo. at 18-21).

6

I.        Plaintiff's Credibility Finding

   A.        ALJ Weir Not Making Credibility Findings

ALJ Weir found it unnecessary to address plaintiff's credibility, because, even accepting

her statements as credible "a finding of disability [was] not supported by the record," (R. 19; see

Docket No. 12, Pl. Memo. at 14), but without stating how the record did not support a disability

finding.   Plaintiff now argues that this deviates from the Appeals Council's remand order which

called for the new ALJ to make credibility findings (Docket No. 12, Pl. Memo. at 13), especially

since plaintiff testified before ALJ Weir (id. at 14; R. 555-76).

Defendant counters that ALJ Weir did comply with the remand order and discussed

plaintiff's credibility, noting that the RFC adopted the most restrictive hypothetical posed by

plaintiff's counsel to the vocational expert and even that hypothetical did not support plaintiff's

subjective complaints (Docket No. 17, Def. Memo. at 22).   Defendant points out that plaintiff's

hospital records routinely recommended no substantial course of treatment in light of her

symptoms (id. at 23; R. 275-76, 401, 456).

The Appeals Council ordered a remand for two purposes, to obtain the opinion of a

vocational expert and to reassess plaintiff's credibility.   ALJ Weir avoided the latter (despite

taking plaintiff's testimony) by assuming plaintiff to be credible but finding that a finding of

disability was not supported by this record (R. 19), without more.   ALJ Weir merely sought the

opinions of the vocational expert, but these opinions were affected by Weir not making his own

credibility findings in posing the hypotheticals to the expert.   Thus, this matter should be

**remanded** to have an assessment of plaintiff's credibility.

B.      Medical Record and Plaintiff's Credibility

Plaintiff alternatively argues that the medical record here supports her subjective complaints and thus she was credible in testifying to the extent of her limitations (Docket No. 12, Pl. Memo. at 16-20).   She rests upon the treatment notes of Nurse Peggy Keller that plaintiff required mental health treatment for three times a week (R. 294; Docket No. 12, Pl. Memo. at 15-16).   But, as defendant argues, nurses are not considered treating sources under Social Security regulations (Docket No. 17, Def. Memo. at 20) and the state agency psychiatrist, Dr. Hillary Tzetzo, concluded that plaintiff was able to work with low public contact, maintain attention for such work, and relate adequately to supervisors (factors incorporated in the RFC) (R. 199, 46; Docket No. 17, Def. Memo. at 20), although ALJ Harvey cited the opinions of Dr. Thomas Ryan, Ph.D. (R. 169-76), which ALJ Harvey gave this assessment "some, but not great weight" (R. 46).

II.      Development of the Record

With the missing records noted in the administrative record (cited by ALJ Harvey, R. 47), the ALJ had the obligation to reopen and supplement the record from treating sources.   Instead, ALJ Weir considered the new medical evidence produced, but found that, despite the entire record, there still was no support for the finding of disability.   Thus, the decision of the ALJs should be **reversed** and this matter **remanded** for further administrative proceedings.

III.     Residual Functional Capacity

Plaintiff argues that the RFC did not consider her absences, of up to three workdays a month, and the fact that employers would not tolerate what would be monthly approximately 85% attendance (see R. 19).   She points to parts of the medical record that support her belief that she

could not work up to three days a month (Docket No. 12, Pl. Memo. at 19-20; R. 565 (plaintiff's testimony), 148, 212-21, 218, 171 (plaintiff attendance at Horizons Continuing Day Treatment Services)), 294 (Nurse Keller's opinion).

Defendant, in addition to rejecting Nurse Keller as a treating source (Docket No. 17, Def. Memo. at 20), refutes plaintiff's reliance on psychiatrist Dr. Sampath Neerunkonda's report (R. 218; but cf. Docket No. 12, Pl. Memo. at 20), noting that Dr. Neerunkonda also stated that plaintiff was being discharged from the day program (Docket No. 17, Def. Memo. at 23; R. 218).   On March 15, 2010, Dr. Neerukonda noted that plaintiff was taking Lamictal, Seroquel, and Cymbalta, tolerating these medicines well and was in the process of being discharged from a program that she attended two or three times a week (R. 218).   The doctor continued the prescribed medication and proposed a follow up a month later (id.).

Plaintiff's absentee testimony is based upon her treatment at the Horizons program which was concluded by 2010.   On remand, the ALJ can consider whether plaintiff has sufficient evidence that, going forward, plaintiff had mental health treatments that would cause frequent absences.   She testified in December 12, 2011, that she just started all-day treatment on a four-day schedule (R. 565).

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **reversed** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 17) should be **denied** and plaintiff's motion for similar relief in her favor (Docket No. 12) should be **granted**.

9

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).   <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>**   <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>F.D.I.C. v. Hillcrest Associates</u>, 66 F.3d 566 (2d Cir. 1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.   <u>See</u> <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be

supported by legal authority."   **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

       So Ordered.

                             *s/Hugh B. Scott*

                             Hon. Hugh B. Scott
                         United States Magistrate Judge

Buffalo, New York
June 2, 2014